I'm David Frame, I represent Charles Williamson, who is the defendant in the case, allow an appellate herein. I hope the court can forgive me, I may send a little curveball your way this morning. I briefed this case very diligently, but at the last minute, as I reviewed for this oral argument, I discovered a case that I think is highly pertinent that I will mention, and I've already made counsel for the government aware of it, and that is the case of United States v. Washington, 1994 case. Judge Moss was on the panel, and I see her shaking her head, so maybe her clerk dug it out, even though I didn't. Why is this being brought up to us now? Is this a 1984 case? It is a 1994 case, but it addresses the factual scenario. When I briefed this, the cases that were argued by myself and the government... When was this? Is this submitted as some sort of supplemental authority, or what? I discovered it so recently, I haven't even had an opportunity... Well, where does that leave opposing counsel? Well, he read it in the library this morning, is all I can say, and I do apologize, Your Honor, it's just something that was discovered. I researched... Maybe you could tell the court, tell my colleagues, since I didn't sit on the panel, what it involves. It, in fact, helps opposing counsel, so... Well, it does in a sense, and of course... The Washington case, which has been around for a while, Mr. Washington was stopped in a traffic stop for driving his car without a license, and attended to a lawful arrest. They seized from his car, and searched his car, and seized 12 grams of crack cocaine. Well, there was nothing in the car such as scales, baggies, anything indicative of distribution. It looked like mere possession, but at the trial, the defendant insisted on testifying, and guess what he said when he was asked about the drugs? He indicated that his friends had contributed money, that he had gone made the purchase, and they said, and he said that he was going to share it with his friends after he purchased the 12 grams. Okay, well, that's a trial issue. What we're dealing here is with a sentencing proceeding. Because what the court said in Washington was sharing it constitutes distribution, and the question arising in this case is, do you attribute the quantity of drugs consumed by personal use of an accomplice as relevant conduct? Well, in order to do that, there's two arguments, and there's a split of circuits on each side. One group of circuits regarding personal use says, no, because that's possession, and that's not the same as the offense of conviction. Therefore, it doesn't count as relevant conduct. The other group of circuits says, it's all part and parcel. It was that the drugs were obtained, and even though maybe that doesn't have anything to do with the facts of this case, which I understand undisputedly, are that the defendant, Mr. Williamson, was the sole obtainer of the meth, that his girlfriend did not obtain any of the stuff. He obtained it from some source, and then gave it to her for her own personal use and for resale. Now, the question is, can all the stuff that he gave to her be counted? And the answer is, he's the one that obtained it for redistribution to her. Your argument is that she is the same person as he is, because they were in conspiracy. But that is a far cry from the facts that you're describing. The normal facts you're describing is where a defendant obtains drugs for his personal use and for distribution. And courts have excluded the personal use, some have, and some have not. But this, it's clear, he have distributed all the drugs that she got. He purchased them from a source, she did not purchase them, and he gave them to his girlfriend. And the assessment in this case was the amount that he gave to his girlfriend. Judge Nehemiah, that's a great argument for the government. Well, that's the facts of the case. She said that, she said, I did not have any contact with the source. On cross-examination, she admitted that she was involved. She was an accomplice in every sense of the word that she was involved. Let me ask you something. Doesn't it say categorically, she said she never had any, she never obtained the meth. It was always Williamson. It does. And so if you want to, if you want to focus on that one aspect of their complicity, then that's right. It's not their complicity, it's the fact that all the drugs she got were redistributed by him to her. And it was a mutual operation. She handled money, she handled drugs, she arranged the sales. But you forget this, they purchased the drugs from some other source. He did. And she denied that she had anything to do with that. So everything he purchased, he redistributed to the extent that she had. Now, the fact that they then smoked it together or resold it together is of no moment. The fact is he redistributed the drugs that he purchased. But I respect that, Judge, but I think it begs the question. And that is whether they were truly complicit. And, you know, in that complicity, it would involve several features. It would involve packaging the drugs, calling the people for resale. The guidelines explicitly address a personal use exception. I mean, the sentencing hinges on weight. And what I'm concerned about is that we're going to be shifting the whole focus of sentencing determination from the question of the weight of drugs that can fairly be attributed as relevant conduct to a defendant to a question of whether something is personal use or use for distribution. You're adding a whole different, a whole other layer of complexity to the sentencing determinations when we move from weight as the load star, not just of charging decisions, which separates possessory and distributional offenses, but also for the offense level. And when you calculate offense level, you're trying to find out how much is attributable to the defendant. And you look at the amount that the defendant has around him. And then you get testimony from other people about how much he's given them and how regular basis has been given them. And then you make an assessment of what the weight of the drug is. And you try to down to make sure that the only thing that's attributable to the defendant is truly attributable to them. And you take, hopefully, a cautious approach to that. Don't attribute everything under the sun. But what you're trying to do here with this is sneak into these sentencing proceedings and have a whole different factor brought in, which is personal use. And as I understand it, the load star for these things is what weight can be attributed to a defendant, not necessarily what use it can be. Because uses migrate. You know, sometimes you may be intended to have personal use for one day. And then you decide, oh, no, I think I'll get some money today. And then you distribute it. I mean, they migrate between uses. But as I understand it, the focus on these offense level cases, I've read lots and lots of sentencing transcript. And it's what is fairly attributable to this person in terms of weight. That's right. And Judge, I'm more than happy to concede that it makes sentencing more complicated and it makes the government's burden more complicated. But think of the rationale. Because remember, where does the guidelines authorize that? Well, because the that are within the scope of the jointly undertaken criminal activity. And in this case, the charge conduct, the conviction in both count, both cases, both defendants pled guilty to the same count of the same indictment, charging, aiding, abetting, distribution of metal. The criminal activity is distribution of metal. And if there's bona fide personal use, the best way to understand it would be that this court's United States versus Bell decision. Now, there's a distinction, which I'll be glad to address. But the distinction here is that that was prescription drugs. You had a defendant who had a legitimate, valid medical problem for which she had a valid medical prescription. And she used, and I don't remember the exact proportion, but a good bit of those drugs for her valid medical reason. And the court said, we are not going to sentence her to the entire way. It would be simpler. We could just look at all the prescriptions. We can go back to the pharmacies and see how many pills she got. It would be much simpler for us and an easier burden on the government. However, it, you know, those are two different crimes. There's, you know, she had, she used these prescription drugs for legitimate, valid reasons. The ones that she didn't, the ones she had an intent to distribute, that's what we're going to attribute to her as relevant conduct. Now, it's not quite as sympathetic when it's a, quote, street drug. Well, of course, in this case, there was distribution. He was charged with a distribution offense. But I just wonder where we're going with this whole idea. And I can see, Judge, it does create a more difficult time for the court in sentencing. I mean, every single case is going to be, you know, no longer does a district judge just look at the weight attributable to a defendant and including the weight of whatever is stashed in his own home. But there's always going to be an argument now. Oh, well, yeah, these these drugs were here, but this one's only, this one was only for personal use. And it, my problem is, you know, sentencing is difficult enough already. And this adds a degree of difficulty to it that I'm not sure I see the basis for in text. In most of the judges who have your same sentiment, Judge, I think fear, it would be so easy for a defendant to always say, oh, gee, I, most of that drug I meant for personal use. But in this case, we don't have that problem. In this case, the government's the one who presented the witness under oath to testify about the personal use because we're talking accomplice. Let me just mention briefly, and Washington refers to, but only says, we declined to decide. There's a second circuit case, very old, 1977 prior to the guidelines even, called Swiderski. You'll still see it footnoted in occasional circuit court opinions about this, because in that case, a couple purchased cocaine and there was no evidence of further distribution. And the Swiderski case held, and still holds within the second circuit, that joint simple possession, those drugs will not count as relevant conduct if there's a conviction of distribution. But as you say, no one else has adopted that theory. And indeed, some courts have rejected. And this court, though, has on the two occasions, which is the... Well, if you don't have to reach a question, it doesn't mean you think that the question is valid. It just means you're not reaching the question. If you look at the other circuit court opinions about personal use of an individual defendant, though, and the rationale, they say clearly, when Congress provided the sentencing laws, they intended to punish much more severely distribution, the criminal activity that involves a network of people and is always adding customers and so on. In this case, when you have situations where two friends or... Whether there is a charge of possessory offense, and a distributional offense. And the reason that both the substantive criminal law and the United States sentencing guidelines have... There's a reason that they put that on weight. And the reason is simply that to spare themselves the interminable argument that every drug in a defendant's possession is somehow, you know, for personal use. Or that every drug is, in this case, is distributed to somehow someone else was for their personal use. It will come up every time. Judge, I've been doing this for 35 years. And almost all the cases I have, the drug weight that's stipulated to in plea bargains or presented at a contested sentencing hearing is historical in nature. The government has witnesses who come in. Very rarely does the personal use of either... That's because we haven't opened the door. Well, Judge, again, and I've repeatedly said this, I do concede to the simplicity of that method, just saying whatever drugs they can... It's not simple. It requires a judgment call and an estimation on the part of the district judge as to what is fairly attributable to the defendant. And I'm proud to say that the district judges in this circuit take a view of this attribution that's in many cases is very cautious and not attributing to defendants a lot of drug amounts that are way out there or are highly speculative. And the sentencing regime is working pretty well with the caution of district judges in not attributing unverifiable weight and speculative weight. Well, why would we do this? Because this is an unusual case. This is an unusual case. This is not unusual. This is quite normal. Here, Williamson had a source for obtaining meth. He paid for it somehow. He used some of it and he distributed a lot of it to his girlfriend and they used it together. And his girlfriend used it and distributed it. So the question is, under 2D, is how much is involved in that conspiratorial conduct? And the guidelines basically talk about the weight involved in the whole transaction or the scheme and not how much was used or how much was distributed or how much was held or how much was resold. It's basically the drugs that were purchased by Williamson and distributed and the weight was not what Williamson used personally in this case. What was used was only the weight of the drugs that he gave to his girlfriend. And she gave the dates and the judge said, oh, that's going to be about 500 grams and he bumped it down to 150 grams. That's right. What's unusual about it is you have a case where two defendants, admitted accomplices in a drug distribution operation, she ends up with a base offense level 16, his base offense level is 32. You have to say what's wrong with this picture. And it's because the government did something and I highly respect Mr. McWilliams, we're great friends, that they did something unusual they don't normally do. In addition to the historical... I want to ask the members of the panel if they have further questions of you. And if they don't, I'm going to ask you to reserve some of this for the rebuttal time. Thank you. I'm very sorry. Judge Meis? Yeah, I'm fine. I'm sorry. We're fine. Good morning. May it please the court. My name is Robert McWilliams. I'm the prosecutor from the Wheeling division who handled this case, both sentencing and has done this appeal. Let me start by indicating that I found one mistake in my brief. I stated that the standard of review on the first issue was abuse of discretion. After studying this more on Monday in preparation for this, it is de novo because it's a legal question as to whether these drugs were attributable to the defendant. But that does not change the calculation at all. I read the Washington case this morning when Mr. Fraiman and I met in the library. It's not a guideline case. It's a sufficiency of the evidence case. And they did hold that drugs for personal use are sufficient to convict for distribution. That's the extent of that holding.  Then we can impute or infer that there will be distribution of it. If somebody buys a kilogram of heroin, he's not buying that person uses implied distribution in that. And we've held that over the years. Absolutely. And it's a factual question. Absolutely. There really is not a split in the sense of every case the defense or the appellant cites in his brief to support his position was a possession with intent conviction. And so I can understand the reasoning of those cases where they say that if a defendant possesses drugs for their own personal use, then we'll exclude that in a possession with intent conviction because those drugs were not possessed with the intent to redistribute. But all drugs are redistributed so that somebody can use them. And Judge Niemeyer, you're correct that in this case, even though the female co-conspirator helped, she did not deal with the source. And Judge Wilkinson, you say, where are we going with this? Well, where we're going is his argument essentially means that if a defendant distributes a truckload of drugs to his co-conspirator and consumes a truckload of drugs, then the defendant's relative conduct is zero. And that makes no sense. So that's really all I have. If there's questions about my brief or anything else... When you ran out of cards? Pardon? Did you run out of cards? I did. But I also, I just think this is, there's no case, there's no case that says that drugs possessed by another person for personal use are not attributable to the person who distributed. There's not one case. And rightly so. He distributed all the drugs that she had, used or distributed. She testified that during fits of trouble in their relationship, she might get drugs from somebody else. But the ones that are counted in this case are the ones that she got from him. Absolutely. Suppose he had not distributed the drugs. We have an aiding and abetting count. I take your point that aiding and abetting is a collaborative enterprise akin to conspiracy. But suppose he had a certain amount and he had not distributed it to her, that he kept it in a room or a stash house on his own property. If there was no, he was convicted of aiding and abetting distribution, but there was no indication that the particular drugs stored on his own property were distributed. And yet the weight of the drugs was substantial and clearly the drugs were connected to him. And the weight of the drugs was substantial enough so that there would be an implied distributional activity going on. What difference would that make? It shouldn't make a difference here because the female ex-girlfriend testified that they were involved with a conspiracy, her and her boyfriend and his source. But I mean, let's say that the charge was aiding and abetting is here or conspiracy. You didn't have the girlfriend's testimony, but you just had a mountain of drugs that were in the home. A district judge could still find those attributable to the individual and the sense that it would go after conviction for an aiding and abetting offense in the sense that it would go to the weight utilized to set the amount of the offense level. I agree. And that is primarily because his conspiracy by obtaining these drugs in large amounts enabled her to use it. It's still part of the conspiracy, even if you don't have her testimony or even if you didn't. It's if you still have a certain amount of drugs and there are a substantial amount of drugs in the home. And that amount of drugs is consistent with a distributional offense. The district judge is entitled, it seems to me, in the discretion of the court to use those and the weight of those as attributable to the defender. And I agree 100 percent. In other words, it's a factual, you say it's a question of law, and it is to the extent that do we, is there a carve out for personal use? That's a question of law. But underneath that question of law is the fact that the whole question of weight on which this depends is intensely factual. And there are a lot of things that can contribute to weight and testimony from the actual recipient of the distribution is one of those things. But it's also true that one of the factors that bears upon the factual finding of weight, and hence the offense level, among other factors, can be the amount that's in a stash house or somewhere in his personal, on his personal property. I agree. And this case is intensely factual. And the facts are that he was a drug dealer who had a source and that he used his girlfriend to help him redistribute. So it is intensely factual here in those facts. But this is the point. Is that, you know, your good opponent is asking us to create a legal carve out whose textual basis I can't find. And if we are asked to do a legal carve out of a factual question for district courts, that's, that's, that's my problem. And I have the same problem. That's why I asked the court to affirm the sentence. All right. Thank you. Let me see Judge Marks. Did you need my? No, I'm fine. All right. Sir, you have some rebuttal time. All right. What raises a red flag and draws some interest to this case is the Goose and Gander problem. You have, you know, two apparently equally situated defendants, and one has a base offense level 16 and one has 32. You know, and so that helps to illustrate why, why these are problems. They didn't attribute to her the weight of drugs that, that she used. She cooperated and he didn't, right? That's, that's the footnote makes it clear. And that's just points out one of the many ways in which the government can kind of take away from the court the discretion they have in sentencing. Or the defendant can exercise the defendant's discretion to cooperate or not. I understand. I would say in the legislative branch now, there's a veritable revolution on sentencing going on. To this court, perhaps it doesn't seem so. But to some on my side of the, you know, these operations, it appears that the, the guidelines are approached in an almost kind of inspecteur, kind of, you know, glee to how, you know, how high can we push these sentences up? And, and I wonder if the courts might adopt policies that make it clear in a case like this, where you have personal use, we don't need to punish that. We don't want to punish that in the same way that we punish actual distribution. And I, I know that doesn't necessarily mean sale of drugs or a commercial operation. But that's all I'm pointing the court's attention to the Swiderski opinion. I think there's some respectable authority for, you know, following that approach. That's what I would ask the court to consider. Thank you. We thank you, sir. And I also see that you're co-appointed and I wish, the court wishes to thank you for the services. And we will come down and brief counsel. Then we'll take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Diana Gribbon Motz